May it please the Court, I'm Joseph Daley for the Plaintiff Appellant, William Kearns. I'm going to watch my time and reserve hopefully three minutes for rebuttal. This morning, Your Honors, I'm going to be addressing a much narrower part of the appeal than Appellant's overall briefing, a discreet ground upon which this Court can rule and allow the case to go forward, even if this Court were to reject Appellant's argument regarding, say, the motion to strike, the footnote, or Appellant's arguments in its reply brief regarding the effect of the Erie Doctrine on Rule 9, oh, I'm sorry, the interplay between the Erie Doctrine and Rule 9b. And that is, I would like to focus on the singular question of whether, given this Court's reasoning and holding in the Vest v. Sibagaygi case, the District Court erred in applying Rule 9b to the entirety of Plaintiff's allegations. Now, this Court's teachings in Vest v. Sibagaygi provide a roadmap for how this complaint should fare under this Court's de novo review. We start with the bedrock predicate, which is, in all civil cases in Federal court in which fraud is not an essential element of the claim, Rule 9b will apply only to those particular averaments of fraud in the case. I think everybody here will agree fraud is not an essential element of the California statutes at issue here. While it is true that they forbid fraudulent acts, they also forbid unlawful, unfair, misleading acts, unfair or merely misleading advertising. And so when fraud is not an essential element of the claim, and the plaintiff includes both fraudulent and non-fraudulent conduct allegations, only those fraud allegations require 9b particularity. The remaining allegations need only meet Rule 8a's requirement of a short, plain statement of the claim. And what's very, very important here, and what I think the District Court forgot, was that even if the fraud allegations that you see in the case are not pleaded with particularity, you don't dismiss the entire claim. You don't dismiss the entire consumer, the California consumer protections claims. You simply strip out those fraudulent allegations, and you see whether the remaining allegations still state a claim. But doesn't Vest say that if the claim is said to be grounded in fraud, the pleading of that claim as a whole must satisfy the particularity requirement? I agree with that, Judge Smith. But now let's look at what grounded in fraud, how this Court defined the term grounded in fraud. It's a two-prong test. The plaintiff has to have alleged a unified course of fraudulent conduct, and you also have to have relied entirely on that fraudulent conduct as the basis of the claim. Now, we've, we've, you're going to find words like scheme and conspiracy in this complaint, of course. But it's not, you won't find the term in this complaint fraudulent conspiracy like you did in the Vest case. The unified course of conduct, pardon me, the scheme here could very well be a scheme among the defendants to act in an unfair manner, to act in an unlawful manner with their, with their advertising. Now, in the Vest case, yes, they allege the fraudulent conspiracy, but also this Court allowed to go forward claims that, of negligent conduct and non-fraudulent failures to disclose, the failure to disclose the effectiveness of the drug Ritalin. But isn't the CLRA, doesn't it prohibit unfair, deceptive acts or practices undertaken by a person in the transaction intended to result, or which results in the sale of goods or services? Isn't that what the CLRA is about? The language, the language from the statute describes unlawful practices. And isn't the UCL prohibit unlawful, unfair, fraudulent business acts or practices? It certainly does. Unfair, deceptive, untrue, or misleading advertising. And so then if I look at these two sections, which you seem to be wanting to, to suggest or your allegations, how do I get it out of grounded in fraud? Two reasons. The first reason is, let's not forget, there's disjunctive language in those statutes. All right? There is fraudulent, of course, but there's also unfair and unfair. Well, but the disjunctive doesn't really say anything, because if I say that a claim under Vest is grounded in fraud, then the pleading of the claim as a whole must satisfy the particularity of requirement. I agree with you. So just because you have two or three different ones alleged under the whole statute, if you ground something in fraud in your complaint, then the whole thing has to be particularly pled. It isn't a matter of pleading one less than another more. If you're going to ground them in fraud, you've got to plead them all. I would agree with that, Judge Smith, but with respect, that may beg the question of whether or not our entire complaint is grounded in fraud. Let's go back to that two areas. I read your complaint. Tell me which part of your complaint is not grounded in fraud. Now I've got it up here. I've read through it. It seems to me that in each part of these situations, it comes to grounding in fraud, in reading the complaint. If I took a count one, unfair, unlawful, deceptive practices in violation, and if I read through the count again, it leads me to the same kind of a conclusion. You're saying they're fraudulently taking advantage of you under that particular matter. If I go through count two, I found the same kind of stuff. And so this is the thing that is most worried. Then if I go to the prayer, for an order enjoying the defendants and their co-conspirators from their unlawful, unfair, fraudulent, and deceptive conduct described therein, and mandating they take coercive operation, I'm having a tough time seeing how the poor district court got it wrong. And I appreciate your concerns, Your Honor. A couple things. Number one, because we are citing the language of the statute, we are using terms like fraudulent. And I'm not trying to harp upon the disjunctive, but the language of the statute is what it is. We can't run away from it. If we sue somebody under the UCL, under the UCL, and I keep on wanting to say UCLA, excuse me.  Don't say UCLA. They're not doing so good this year. You are going to see terms like fraudulent in there. But, for example, deceptive. A deceptive action by a defendant does not necessarily rise to the level of a fraudulent action by the defendant. I mean, Bess v. Cedogaghi points out that these California consumer protection claims, fraud is not an essential element of them, even though it uses terms like deception, et cetera. Now, I would like to – I understand the complaint. It paints a pretty bad picture of the defendant's behavior, and it's a little ironic. On the one hand, one might – some observers may say that the complaint paints a picture of fraudulent knowing conduct. And then on the other hand, though, we haven't pleaded with enough particularity to show fraud. But I think that there are several paragraphs in the complaint that allow us to fit within Bess v. Cedogaghi's point that unless you are alleging a unified course of conduct and you are relying entirely upon that fraudulent conduct. And let me – I'm just going to list some of the paragraphs for Your Honors. I will paraphrase the paragraph, but I will give you the specific paragraph cites so that at your leisure, perhaps later on, you may glance at a few of them. Negligent conduct by the defendants. In paragraph 27 – so that's Excerpt of Record 65 of paragraph 27. That paragraph says, The defendant should have known that the repair and the accident history reports were incapable of accurately reporting whether odometers had been rolled back, a vehicle or its components were the subject. What page are you looking at now? This is paragraph 27 of Excerpt of Record 65. So in paragraph 27 of your complaint. Yes. Let me find it. If Your Honor would – it's first tabbed in Plaintiff's Excerpt of Record. And then instead of giving you page numbers, we thought it would be more accurate and easy to give actual paragraph numbers. So there, if you turn to paragraph 27, you'll see that line. Paragraph 6. We say that the CPO, the certified pre-owner. You were on 27. I was. And I say plaintiffs should have known all those factors that I just mentioned, whether or not the vehicle title was actually salvaged or junk, et cetera, and whether the vehicle had sustained frame damage. In particular, I like paragraph 6. The CPO technicians. You're driving too fast for me. I'm sorry. I'll slow down. Driving a Thunderbird. What are you looking at now? Pardon me? What are you looking at now? Paragraph 6. The certified pre-owned technicians ostensibly gained that status by watching a 15- to 20-minute video and taking a 20-question open book test, which elsewhere in the complaint, we specify they can take as many times as they want until they pass the thing, so that in that paragraph, paragraph 6 specifies that the notion that they are, quote, highly trained or the progress is rigorous is, quote, misleading. There's not a word of fraud in that paragraph. Let me ask you a question, counsel. How many times did the district court allow you to amend your complaint? I believe at least twice. Three times. Didn't they allow you to do it three times? Didn't you have a third amended complaint that they also dismissed? Mm-hmm. So there was a complaint, then there was a first amended, a second amended, a third amendment. And even on the third amendment, the Dole District Judge said, you can go back and allege some other stuff. You can change this to get it out of the fraud context. And you chose not to do it. So here we are. The district court is telling you every one of these ways, every step of the way, being an old district judge, hey, you're alleging. He's not that old. Oh, he's not that old. Sorry, he's not that old. That's right. You're alleging fraud here. You've got to prove it with particularity. He's done it four different times and said, don't do that. And you did the same stuff. And he said, I've got to throw it out. Now tell me, now you come up to me and you want me to read these statutes or read your complaint and say something different. But the bottom line is, if you wanted to change what the complaint said, why didn't you amend it outside that? Well, that's because if we had assumed that the entire course of action taken by the defendants was fraudulent and that we wanted to meet that standard. Well, you didn't evidently meet it. You never could plead enough fraud. And, frankly, I agree with him. I don't think the fraud in the complaint is alleged with particularity. But if you're really now arguing, well, we didn't really need that fraud. We were going for something else, so we didn't need to say it with particularity. That's true. We didn't. Why didn't you allege it? We started over in state court. We started over in state court and were brought into federal court under CAFA. We were suing any one of these allegations would suffice under the California Consumer Protection statutes. I don't know if they have applicable statutes and I don't know. Well, tell me, you got here, you got here plaintiff must specify the who, what, when, where, and how of the misconduct charge. I don't disagree with that. That's the 9b particularity statute. We haven't met it. We have not met it. I will say, there's no need to even, quote, concede it. We haven't, we just haven't met it. Why haven't you met it? We didn't have to meet it. You don't have to meet 9b particularity to bring a California Consumer Protection claim in which fraud is not an essential element. It's long been settled that these two California Consumer Protection statutes do not require a showing of fraud. Not at all. All they, all they. Well, if you say in your complaint, I'm looking at, at, I'm not looking at your order on page 2, the last, page 3. It says, according to plaintiff, defendant's marketing materials and representations led him to believe that CPO. Certified pre-owned. Chief Petty Officer. Chief Petty Officer or certified pre-owned. In other words. Certified pre-owned were inspected by specially trained technicians and CPO inspections were more rigorous than non-CPO inspections. And that course of conduct describes an unlawful act underneath the CLRA, the Consumer Legal Remedies Act, representing that goods or services have characteristics that interfere. He fails to identify what television advertisements and sales materials specifically stated. I'm not disagreeing with that, Judge Petersen, but that is his 9B particularity holding. And under this court's de novo review, I'm saying this panel. So why didn't you do that? I don't know why it wasn't done. All I know is you don't need that in order to. But why, you know, look, he's handling this case. If it ever goes back, he's going to handle it, right? He's going to be an important factor in this case. I agree. Okay. You understand all that, don't you? I do, Your Honor. Okay. So why not try to answer some of those questions? Whether you think you should or not. Just as a matter of being smart. I'm not prepared to throw anybody under the bus. I'm the appellate lawyer on this. This was handed to me a few months ago. But the litigation team's strategy for perhaps why they did not want to plead certain elements of an actual fraud is known to them and not myself. But I don't know. Well, but you're supposed to have constructive knowledge of it. I see. I've run well into my rebuttal time. So I'm 14 seconds left. Well, I will just say I understand the panel's frustration. And I certainly understand the district court's frustration with the litigation and litigators not pleading certain fraud elements like who at the dealership spoke to Mr. Kearns. It seems pretty easy to do. But still, at the end of the day, if we are bringing these two California Consumer Protection Act claims in which we do not have to plead who he spoke to, what time does that make this case? Well, the judge thinks you should. So you should do it. Well, perhaps. Class actions are not looked upon with a great deal of compassion. I know that firsthand. And that's how we ended up in federal court, as a matter of fact, because of the capital. Yeah. I would close by saying, under the court's de novo review, if you were to look at some of those paragraphs that I mentioned, they don't sound in fraud. They don't meet the two-pronged test in Vest v. Ciba-Geigy. We don't rely upon fraud allegations in those paragraphs, and yet those paragraphs do stand out. But there's a lot of stuff in there that these people are just liars. They're cheats. And they knew it. I agree. Doesn't that come close to fraud? I agree, Judge Fragerson. It may come close, but what you do is you take them. You're saying that, oh, they sell these as a certified pre-owned something, and they give you this certificate, and they also throw in a warranty, right? Right, and they charge you an extra $1,000 and $80, exactly. But not for the warranty itself. No, no. You don't have to take the warranty. For the CPO certificate. The warranty is part of the deal, right? But everything you've just described, I'm telling you, you can throw out the window. That's what this Court said. But the warranty is part of the deal. Yes. Okay. And so you get the benefit of a warranty. What does a warranty cover? I don't know what it covers, but I know what it doesn't cover. The complaint alleges that the warranty does not cover all of the items that are certified under the CPO program. So in other words, you buy one of these. What does it cover that the initial warranty doesn't cover? I have no idea, Your Honor. I don't even know if that's in the record to tell you the truth. It isn't. Okay. But I would note, the lying that you talked about, the lying and the fraudulent behavior, this Court says you can throw that out. You don't we haven't met it. I agree, we have not met the standard. But that doesn't mean we lose overall. We just lose on trying to prove fraud as to that allegation. The remaining allegations, it may be a very bare-bones complaint after that. There may be five or six paragraphs that describe unfair, unlawful, misleading conduct. Those paragraphs by themselves suffice. Did you argue this to the district judge? I don't know if they argued that to the district judge. I think their main thrust was we don't have to meet 9b particularity, which is probably another way of saying what I just said, yes. Why don't they just file an amended complaint and leave all this fraud stuff that could be. Well, I think after three times, I think they thought they and the judge were at loggerheads. And you're right, they did file a statement that said we are standing on our complaint. I believe they wanted review by this Court under its holdings in Vest v. Sibagaygi. So if you're loggerheads, if you're smart, you'll do what the district judge tells you. Well, hindsight is 20-20, Your Honor. But, you know, you've got a lot of people in that law firm that got a lot of hindsight and foresight. Okay. All right. Thank you. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Thomas Reardon. I'm here with my co-counsel, Molly Magnuson. And we're here representing Ford and also the independent Ford dealership, Claremont Ford. And the appellees are here. What's really wrong with, according to the order, granting the motion dismissed, looking at page 3, the judge says defendants' marking materials and representations led him to believe that inspections were more rigorous than non-CPO vehicle inspections. And then Ford's televised national marketing that plaintiffs allege is being exposed to these representations through televised national marketing campaign, sales materials at the dealership, sales personnel working at the dealership. Why isn't that enough? Well, what particularity do you want? The particularity. From this guy, Kearns? Your Honor, yes. That he's representing a class. So different members of that class might put more of an emphasis on television or pitches salesmen made or whatever. And then, you know, they're alleging that these mechanics got 20 minutes of video, an open book exam, and if they flunked that, they could take it over again. And that they didn't do anything more to these CPO vehicles than they would do with any other used vehicle that the agency took in and put up for sale as a plain old, everyday, uncertified used car. Why isn't that enough particularity? Because, Your Honor, the way it's pled is in vague generalities, and we do want to focus, and we must at this point, because the only claim that is right now before the Court is the Kearns claim. And does this plaintiff have a cause of action? We get to issues of the class further down the road. And Your Honor has listed a number of reasons why this shouldn't be certified as a class to begin with. But at this point, the whole point of the exercise is to have Mr. Kearns say, besides just very general statements, which are all contained in one paragraph, I believe about paragraph 9 of the complaint, that deals with Mr. Kearns. So if he talks about having... If he hooked up the brochure, and if he put in the name of the salesman, and if he got some information on the training that they got, that would be enough. He needs to point to the circumstances of the fraudulent conduct, and that means the who, what, when, where, why. This is the holding of this Court, and it has been well-established for a long period of time. And what he would have to do... And it's important to know what... So who's the who? Well, it's a good question. You can't tell from the complaint, can you? And that's the problem, Judge Gregerson. I can tell. I can tell from the complaint. Can you tell whether it's Ford or whether it's a dealer? That's a big difference on who makes the... And he talks in here about the Ford people do it. They set out to have a national campaign, and the dealers do it, and the mechanics do it, and the salesmen do it. And what do they do? You know, they tell me, people who come in, if you get a certified car, it's safer, it's been inspected, you get a warranty with it, you pay a little bit more money. That's what, when? That's when you go in to buy the car. Or when you see an ad on television. Or when you go in there and they hand you this little brochure, if they do that. Where? Right on the lot. Or when you call. Or in an ad. And how? How do they do it? Well, they do it through advertising, through salesmen, through mechanics. And then... It's not enough, Your Honor. That's exactly what the teaching of Vesey is. If you're going to ground your claims in fraud based on this overarching conspiracy between Ford and unnamed co-conspirator dealerships, you need to give some facts that state very precisely, and with particularity, why it is. You listed as you went through each one of those. I don't know why they put all that stuff in there. I thought it was stupid myself. And there's a lot of repetition in here. But you can get the answers. The problem is you can't get the answers. The problem is if you plead things generally, that this group of co-conspirators said things that would lead people to believe something. What did they say? Who did they say? Did he see the television ad before he bought the truck? Did he see the television ad after he bought the truck? Was it the dealer that said something to him on the lot? Or was it something he read in a brochure that led him to believe something was safer or more reliable or more roadworthy? It should be hard to write down. And it's about his claim. He ought to be able to at least speak to what his claim was before we grind up the wheels of the court and begin moving forward. Unless he's made up, you know, out of old cloth. I don't know. And that's why if it's a fraud, if it's a claim that is grounded in fraud, that's why he's got the particularity, because we don't know if it's made up or not. What does grounded in fraud mean? That means a uniform course of conduct. In law school they used to say, smacks of fraud, you know. I think that sounded in fraud as well as grounded in fraud. Smacks of fraud. It means that the allegations are a uniform course of fraudulent conduct. And this case does talk about this uniform course of fraudulent conduct in very conclusory and very speculative sorts of ways. I mean, the plaintiff has agreed, we didn't meet Rule 9b. I mean, he's conceded that here if it wasn't obvious from the four times he got to amend his complaint throughout the course of this project. And what's really telling here and why the policy of Rule 9b is served by affirming the district court is precisely because when he first filed his complaint, he did put in some statements from Ford. He put in a few quotations from the website, a quotation from a letter that was given to him when he purchased a CPO vehicle, little snippets. And we went before Judge Fees on the first complaint and we got that material incorporated by reference because the complaint agreed, relied upon those materials for the basis of at least some particularity. At least some particularity. Well, Judge Fees and his orders in the record said, well, look, if you read those websites and if you read that letter, it's very clear that this CPO vehicle is a vehicle, a certified pre-owned vehicle, is not the same as your ordinary used car, which a used car runs from the junker that I owned in college to, you know, a nice, you know, used car that you could buy today. Who even knows what the typical used car is? With a junker. But the point being, though, is that this is why Rule 9b exists. The plaintiff's response to Judge Fees was to strip the particularity out of whatever particularity he had out of his complaint and continue on with a second amended complaint and a third amended complaint, never bringing back the particularity. I mean, this is why we have Rule 9b. And this is a prime example of why this case really does fall under VESS, because everything that is pled here really is based on this overarching conspiracy. Now, does VESS by itself suggest that we have a decision to make in this case, which is affirming the district court? Because VESS was certainly about a plaintiff which claimed that the actions violated the CLRA and the UCLA, or UCL, just like this, and they held in that case, dismissed the complaint. Do you think that that case, VESS, is the precedent upon which we can make our decision here? I think VESS is on all fours on this case. It shouldn't be a close call for this Court, given the allegations in the record that the Court has about the pleadings. I also think that... Explain that, would you? Why is it on all fours? Oh, I think it's on all fours because what we have actually, what was alleged in that complaint in VESS was that the plaintiff, who was a patient and taking Ritalin for his attention deficit disorder, brought this claim against Novartis. You know, I guess they bought, it was a Siva Geigy, Novartis is easier to say. Brought it against Novartis and a couple of other organizations that were, that dealt with attention deficit disorder. And alleged, much like here, that there was a conspiracy among this group to tout benefits of Ritalin, such that it would push sales and, of course, that would improve the profits of the drug company, and the drug company was funneling money to these organizations that had to deal with people that had attention deficit disorder. And the Court here looked at those allegations and said they, again, they weren't pled with enough particularity as to what was the nature of this conspiracy and how these groups got together and, you know, defrauded, essentially, the folks that were taking Ritalin into taking it. And the important part, isn't it, that the plaintiff claimed that these actions violated the Siva Geigy? The CLRA and the UCLA, exactly as is pled in this complaint. That's correct. The claims are pled exactly, that's exactly right, Judge Smith. And it's on, you know, it's the plaintiff here today, the appellant, you know, tried to argue, well, there's some piece of our complaint that isn't grounded in fraud. And he pointed to Paragraph 27, Paragraph 6. And Paragraph 6, use of the term misleading, that entirely fits under any sort of construct of fraud that you can come up with. That's not even availing. And even in the one paragraph where, and it's the only place in the complaint where the should have known was slipped in as a phrase, if you read that entire paragraph, it says, well, we're getting together to push these history reports to the public in order to, again, do the same thing. All part of this conspiracy to lead people to believe the cars were safer or more reliable or more roadworthy than other used cars. And so I feel that that really is on all fours on this case. I actually, if they're going to submit on papers on the motion to strike the footnote, we will submit as well. Thank you, Your Honor. He'll see the minute and 43 seconds, too. Very quickly. And I wasn't depending on that, but thank you. Judge Smith, with respect, I think you've misstated the holding of Vess. Vess reverses the ---- Well, I didn't misstate. I suggested the question and asked him to answer it.  I'm sorry. It sounded as if everybody up here was in agreement that Vess included California CLRA claims and ECL claims and that this Court affirmed the dismissal of those complaints ---- those claims based upon the particularity holding. That's not what happened. In Vess at page 1106, so 317F3 at 1106, many of Vess's allegations describe non-fraudulent conduct, et cetera, et cetera. These allegations should not have been disregarded or stripped from the complaint pursuant to 9b. We therefore reverse the district court's dismissal of the entirety of Vess's complaint for failure to satisfy 9b. That's what Vess says. I agree Vess is on. We are on all fours with Vess. I just don't agree with the result that opposing counsel thinks should happen. And just one other thing. That paragraph I cited to you that included language or that stated specifically that a certain bit of conduct was misleading. Counsel said misleading conduct is fraudulent conduct. That's not true. Fraudulent conduct is a very certain specific type of conduct with certain elements. I can make a misleading statement right now. Somebody can come up to me and say, I've just been popped for drunk driving. I would like you to represent me, but I want to make sure I'm going to get a lot of my buck. How do you think you'll do? And I can say to that person, truthfully, I have never lost a drunk driving case in court. That's a true statement. But I've never defended a drunk driving case either. So that is a misleading statement. And under the California Consumer Protection statutes, me trying to sell my services through that misleading statement gets me there. It's not a fraudulent statement, but it's misleading. Thank you, Your Honors. All right. Thanks. All right. We've come down to Moises, Navarro, Soki versus Mukasey. Are they here yet? Okay. Oh, the other guy didn't show up? Who didn't show up? No, they're talking in another court. Oh, in another court. He was going to argue first. Oh, but the other guy didn't show up there. The other guy didn't show up there, so they put him last. So now he can't come in here. I got the picture. We've got to wait for him to come. Yeah, I got the picture. All right. We'll take... Huh? We'll take a recess. Yeah, we'll take a recess. Unless anybody's got a campaign speech to make out there. Okay. All rise for Senate recess.
judges: Pregerson, Hall, Smith